Moss, Judge,
delivered the opinion-of the court:
On April 23, 1917, one Carlo de Luca entered into two separate contracts with the Standard Shipbuilding Corporation for the construction of two cargo steamships according to plans, specifications, and conditions described, known as hull No. 10 and hull No. 11, of approximately 7,300 tons dead-weight capacity each, at an agreed price of $150 for each ton of dead-weight capacity, or $2,190,000 for both ships. Hull No. 10 was to be completed March 31, 1918, and hull No. 11 April 30, 1918. The said contracts were identical, except the vessels were therein respectively designated as hulls Nos. 10 and 11 and were to be completed on March 31,1918, and April 30, 1918, respectively.
*35 On July 25, 1917, these contracts were duly assigned to plaintiff, Consorzio Yeneziano di Armamento e Navigazione.
On July 11, 1917, the President, by virtue of authority vested in him by the act of Congress of June 15, 1917 (40 Stat. 182, 183), delegated the powers conferred upon him by the said act to the United States Shipping Board Emergency Fleet Corporation, and under the authority so conferred the Shipping Board on August 3, 1917, served on the Standard Shipbuilding Corporation an order requisitioning “ all power-driven, cargo-carrying, and passenger ships above 2,500 tons d. w. capacity under construction in your yards, and certain materials, machinery, equipment, and outfit necessary for their completion are hereby requisitioned by the United States.” By said order the Standard Shipbuilding Corporation was also required to complete the construction of such vessels Avith all practical dispatch. Hull No. 10 and hull No. 11 were among the vessels in the yards of the Shipbuilding Corporation. Prior to August 3, 1917, the Shipbuilding Corporation had placed orders for all classes of materials necessary for the construction of ships of this type at prices lower than prices prevailing after August 3, 1917, and these materials, so ordered, were all delivered to the Shipbuilding Corporation, and were used in the completion of hulls No. 10 and No. 11. These two vessels, with certain changes and modifications set forth in- the findings, were completed and delivered to the United States on January 10, 1919, and March 12, 1919, respectively.
Prior to July 25, 1917, there had been paid by de Luca, plaintiff’s assignor, to the Standard Shipbuilding Corporation as provided in the contracts on account of the construction of said Aressels the first three installments amounting to $635,100. On July 31, 1917, plaintiff paid to the Shipbuilding Corporation the fourth installment due under the contracts amounting to $153,300. The total amount, therefore, paid on account of the contracts by plaintiff and his assignor prior to August 3, 1917, was $788,400.
In addition to the $153,300 (the fourth installment) paid by plaintiff to the Shipbuilding Corporation plaintiff paid to de Luca the amount which had been paid on the contracts by de Luca, $635,100; and it also paid de Luca for the assign *36 ment of said contracts the sum of $1,000,000. It further expended in fees, commissions, taxes, and other charges growing out of the purchase of the contracts the sum of $491,131, making the total amount expended by plaintiff on account of these contracts $2,280,131.
Prior to August 3, 1911, the Standard Shipbuilding Corporation deposited in escrow with the Guaranty Trust Co. of New York for the faithful performance of the work as required by the tei’ms of the contracts the sum of $328,500. Thereupon the Guaranty Trust Co. procured from the Globe Indemnity Co. a bond dated July 23, 1911, in favor of the purchaser for the sum of $328,500, conditioned upon the construction and delivery of the said vessels by the shipbuilder in accordance with the terms of the contracts. Thereafter, because of said bond, the purchaser released said deposits and the Guaranty Trust Co. paid the same to the Standard Shipbuilding Corporation.
In accordance with the provisions of the act of June 15, 1917, plaintiff filed its claim for the payment of just compensation with the United States Shipping Board Emergency Fleet Corporation for the property which was taken under the requisition order of August 3, 1917, and was awarded as just compensation the sum of $816,651. The award was unsatisfactory to plaintiff, and on August 27, 1920, pursuant to the provisions of said act, it received from the Government $612,488.25, this amount being 75 per cent of the award. This action is for the recovery of the sum of $3,402,511.75, this amount being the difference between the .amount paid to plaintiff under the award and the amount claimed by plaintiff as the value of the property requisitioned.
The Government contends that said Requisition order applied only to ship materials and ships in process of construction, and did not embrace the contracts themselves.
Under the decision of the United States Supreme Court in the case of Brooks-Scanlon Corporation v. United States (265 U. S. 106), which involved a similar transaction and a contract in all essential respects similar to the contracts involved in this case, the court must hold that the contracts *37 involved here were expropriated by the requisition order of August 3, 1917.
Just compensation according to the decision in the Brooks-Scanlon case is the “ value of the property taken at the time of the taking.” It should be such an amount as will place the owner “ in as good condition pecunarily as it would have been in if its property had not been taken.” The court further proceeded to specify certain factors which must be considered as the basis for the determination of just compensation, in the following language:
“ The value of such ships at the time of requisition, and the then probable value at the time fixed for delivery, the contract price, the payments made and to be made, the time to elapse before completion and delivery, the possibility that by reason of the Government’s action in control of materials, etc., the contractor might not be able to complete the ship at the date fixed for performance, the loss of use of money to be sustained, the amount of other expenditures to be made between the time of requisition and delivery, together with other pertinent facts, are to be taken into account and given proper weight to determine the amount claimant lost by taking * *
The record in this case abundantly establishes the existence of a demand for ship contracts during the years 1916 and 1917. Such contracts were in demand not only among domestic shipowners but with foreign governments as well. It arose by reason of the destruction of ships under the German submarine campaign, and it was immediate and urgent. Ships already in process of construction, or those merely under contract for which materials had been delivered or ordered, were preferred as offering the first promise of relief. Shipowners gave consideration not merely to the immediate needs pending the war but were influenced in making such purchases by the natural expectation of an -unusual demand for world tonnage after the war. Many ship contracts were purchased prior to the requisition date, and a few were purchased thereafter. It was an active and rising market, and reached its highest activity in March and April, 1917. Prices for ship contracts *38 took a wide range, but in all such transactions the prices paid were in excess of the original contract prices.
We have given full consideration to the facts in this case and to the specific factors mentioned in the Broohs-Scanlon opinion herein above fully set forth, and it is the opinion of the court that just compensation to the plaintiff as of the date of the taking for the two contracts involved herein is $1,226,400. To this sum there should be added $225,657.60, which is interest at the rate of 6 per cent per annum from August 3, 1917, to the date of the payment of the award, August 27,1920, making a total of $1,452,057.60, from which there should be deducted the amount paid plaintiff on August 27, 1920, under the award, $612,488.25, leaving a balance of $839,569.35, which with interest at the rate of 6 per cent per annum from August 27, 1920, to date of judgment amounts to $1,165,182.34.
It is therefore the judgment of the court that plaintiff recover herein the sum of $1,165,182.34.
Geaham, Judge; Hal/,. Judge; Booth, Judge; and Campbell, Chief Justice, concur.